# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

MATTATHIAS SCHWARTZ,                    )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )
                                        )  Case No. 13-cv-5004 (CBA)(ST)
UNITED STATES DRUG                      )
ENFORCEMENT ADMINISTRATION,             )
                                        )
                    Defendant.          )
                                        )
                                        )

## DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR ATTORNEYS FEES AND COSTS

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

Jolie Apicella
Assistant U.S. Attorney
(Of Counsel)

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

BACKGROUND .................................................................................................... 1

LEGAL STANDARDS ........................................................................................... 5

ARGUMENT .......................................................................................................... 6

I.  PLAINTIFF IS NOT ELIGIBLE FOR AND ENTITLED TO AN
    AWARD OF FEES ..................................................................................... 6

    A.  Plaintiff is Not Eligible to Recover Fees for Work Pertaining to
        Records Other than the Ahuas Video .......................................... 7

    B.  Plaintiff is Not Entitled to Recover Fees ................................... 8

II. PLAINTIFF'S REQUESTED FEES ARE EXCESSIVE AND
    UNREASONABLE ................................................................................... 13

    A.  Plaintiff's Hourly Rate for the Lodestar is Not the Prevailing
        Community Rate for FOIA Work .............................................. 15

    B.  Plaintiff's Requested Fee Should be Reduced Because the
        Records Show Excessive Number of Attorneys, Hours and
        Redundant Services .................................................................. 24

        i.   Overstaffing ..................................................................... 24

        ii.  Excess Number of Hours ................................................. 27

    C.  Plaintiffs' Requested Fee Should be Reduced Due to "Block
        Billing" and Vague Descriptions of Tasks Allegedly Performed ............. 32

    D.  Plaintiff Requests Fees for Acts that are not Compensated under
        FOIA. ........................................................................................ 35

    E.  Plaintiff Costs Should Be Reduced ........................................... 37

    F.  The Second Circuit's Limitation of Reasonable of Fees to
        Amounts  That a "Reasonable Paying Client" Would Pay Local
        Counsel  Mandates A Significant Reduction Of Plaintiff's
        Counsel's Billings ...................................................................... 38

CONCLUSION .................................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

*Ajluni v. Federal Bureau of Investigation*, 1997 WL 196047
(N.D.N.Y. Apr. 14, 1997) ..................................................................................... 14, 22

*Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*,
810 F. Supp. 2d 267 (D.D.C. 2011) ........................................................................ 14

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*,
82 F. Supp. 3d 396 (D.D.C. 2015) ....................................................... 22, 25, 27, 39

*Am. Petroleum Inst. v. U.S. Env't Prot. Agency*, 72 F.3d 907 (D.C. Cir. 1996) ........................... 33

*Andersen v. Leavitt*, No. CIV A 03-6115 (DRH), 2007 WL 2874838,
(E.D.N.Y. Sept. 27, 2007) ......................................................................................... 7

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
522 F.3d 182 (2d Cir. 2008) ................................................................. 16, 17, 23, 38

*Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167 (D.D.C. 2011) ......................................... 8

*Blackman v. District of Columbia*, 677 F. Supp. 2d 169 (D.D.C. 2010) ...................................... 21

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................ 14

*Brady v. Wal-Mart Stores, Inc.*, 2010 WL 4392566 (E.D.N.Y. Oct. 29, 2010) .................... 19, 24

*Brayton v. Office of the U.S. Trade*, Rep., 641 F.3d 521 (D.C. Cir. 2011) ............................ 11, 12

*Bryant v. Cent. Intelligence Agency*, 818 F. Supp. 2d 153 (D.D.C. 2011) .................................... 8

*Carmody & Torrance LLP v. Def. Contract Mgmt. Agency*, No. 3:11-CV-1738 JCH,
2014 WL 5684391 (D. Conn. Nov. 4, 2014) ............................................................ 5

*Chesapeake Bay Found. v. U.S. Dep't of Agric.*, 11 F.3d 211 (D.C. Cir. 1993) ......................... 11

*Church of Scientology of California v. Harris*, 653 F.2d 584 (D.C. Cir. 1981) ........................ 6, 9

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
825 F. Supp. 2d 226 (D.D.C. 2011) ........................................................................ 35

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
80 F. Supp. 3d 1 (D.D.C. 2015) ......................................................................... 14, 15

*Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977) ................................................................. 10

*Cush-Crawford v. Adchem*, 94 . F. Supp. 2d 294 (E.D.N.Y. 2000) ............................................ 25

*Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Env't Prot. Agency*, 169 F.3d 755 (D.C. Cir. 1999)........................................................ 25, 33

*Davy v. Cent. Intelligence Agency*, 550 F.3d 1155 (D.C. Cir. 2008)............................................. 10

*Dorsen v. U.S. Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112 (D.D.C. 2014) ............................ 11, 12

*E.S. v. Katonah-Lewisboro School Dist.*, 796 F. Supp. 2d 421 (S.D.N.Y. 2011)............. 18, 27, 28

*Favors v. Cuomo*, 39 F. Supp. 3d 276 (E.D.N.Y. 2014)............................................................... 17

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19 (E.D.N.Y. 2015) ...................... 17

*Found. v. Office of the Dir. of Nat'l Intelligence*, No. C 07-05278 SI,
2008 WL 2331959 (N.D. Cal. June 4, 2008) .................................................................................. 8

*Friedman v. Self Help Cmty. Servs., Inc.*, No. 11-CV-3210 (NGG) (JO),
2017 WL 663539 (E.D.N.Y. Feb. 17, 2017)................................................................................. 18

*Gonzalez v. Bratton*, 147 F.Supp.2d 180 (S.D.N.Y. 2001).......................................................... 37

*Heng Chan v. Sung Yue Tung Corp.*, No. 03–6048, 2007 WL 1373118
(S.D.N.Y. May 8, 2007).................................................................................................................. 19

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .......................................................................... 13, 14

*House v. Wackenhut Servs., Inc.*, No. 10 CIV. 9476 CM FM, 2012 WL 4473291
(S.D.N.Y. Sept. 27, 2012)............................................................................................................. 19

*I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, Inc.*, 92 Civ. 0597(PKL),
2003 WL 135797 (S.D.N.Y. Jan. 17, 2003) ................................................................................. 37

*In re Mullins*, 84 F.3d 459 (D.C. Cir. 1996) ............................................................................... 23

*In re North*, 8 F.3d 847 (D.C. Cir. 1993) .................................................................................... 23

*Janus v. Regalis Const., Inc.*, No. 11–CV–5788 (ARR), 2012 WL 3878113
(E.D.N.Y. July 23, 2012) ............................................................................................................... 24

*John v. Demaio*, No. 15 CV 6094 (NGG) (CLP), 2016 WL 7469862
(E.D.N.Y. Sept. 29, 2016), *report and recommendation adopted*,
No. 15-CV-6094 (NGG) (CLP), 2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016)................... 17, 20

*Judicial Watch, Inc v. U.S. Dept. of Justice*, 878 F. Supp. 2d 225 (D.D.C. 2012) ...................... 36

*Laughlin v. Comm'r*, 117 F. Supp. 2d 997 (S.D. Cal. 2000) ......................................................... 9

*Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator &
Standard Sanitary Corp.*, 487 F.2d 161 .................................................................................... 15

*M.C. ex rel. E.C. v. Dep't of Educ. of City of New York*, No. 12 CIV 9281 CM AJP,
2013 WL 2403485 (S.D.N.Y. June 4, 2013), *report and recommendation adopted*,
No. 12 CIV. 9281 CM AJP, 2013 WL 3744066 (S.D.N.Y. June 28, 2013) ................................ 27

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension
Trust Fund*, 450 F.3d 91 (2d Cir. 2006) ...................................................................................... 32

*Millea v. Metro-North R. Co.*, 658 F.3d 154 (2d Cir. 2011) ......................................................... 14

*Miroglio S.p.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307 (S.D.N.Y. 2009) ........................... 32

*Molefi v. Oppenheimer Trust*, 2007 WL 538547 (E.D.N.Y. Feb. 15, 2007) ................................. 33

*Morley v. CIA*, 828 F. Supp. 2d 257 (D.D.C. 2011), *vacated and remanded in*
719 F.3d 689 (D.C. Cir. 2013) ....................................................................................................... 9

*Mr X v. New York State Educ. Dep't*, 20 F. Supp. 561 (S.D.N.Y. 1998) ...................................... 26

*Mullen v. U.S. Army Criminal Investigation Command*, No. 1:10CV262,
2012 WL 2681300 (E.D. Va. July 6, 2012) ..................................................................................... 7

*Murray v. Comm'r of the State of N.Y. Dep't of Educ.*,
354 F. Supp. 2d 231 (E.D.N.Y. 2005) .......................................................................................... 24

*N.Y. Times Co. v. Cent. Intelligence Agency*, 251 F. Supp. 3d 710 (S.D.N.Y. 2017) ........... *passim*

*Nat'l Ass'n of Concerned Veterans v. Sec'y of, Def.*, 675 F.2d 1319 (D.C. Cir. 1982) ......... 22, 33

*Nat'l Sec. Archive v. Dept. of Defense*, 530 F. Supp. 2d 198 (D.D.C. 2008) .............................. 11

*New York State Association for Retarded Children, Inc., v. Carey*,
711 F.2d 1136 (2d Cir. 1983) ....................................................................................................... 14

*Pastre v. Weber*, 800 F. Supp. 1120 (S.D.N.Y. 1991) ................................................................. 24

*Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill
Improvement & Safety Funds v. Triple H Concrete Corp.*, No. 15 Civ. 6687 ARR VMS,
2018 WL 1178036 (E.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*,
No. 15 Civ. 6687 ARR, 2018 WL 1175151 (E.D.N.Y. Mar. 6, 2018) .......................................... 21

*Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986) .......................... 14, 15

*People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*,
130 F. Supp. 3d 156 (D.D.C. 2015) .............................................................................................. 10

*Perdue v. Kennedy A.*, 559 U.S. 542 (2010) ............................................................................... 14

*Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border
Prot.*, Civ. No. 04-377 (JDB), 2006 WL 3060012 n.4 (D.D.C. Oct. 26, 2006) ..................... 11, 12

*Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009) ....................................................... 5, 6, 14

*Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149 (D.D.C. 2015) ......... 22, 39

*Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61 (D.D.C. 2013).............. 35

*Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*,
982 F. Supp. 2d 56 (D.D.C. 2013)................................................................................................ 21

*Privacy Info. Ctr.*, 2011 WL 4014308 ........................................................................................ 36

*Pvatt v. Jean*, 2010 WL 3322501 (E.D.N.Y. Aug. 17, 2010)....................................................... 33

*Rotella v. Bd. of Educ. of New York City*, 2002 WL 59106......................................................... 38

*Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238 (E.D.N.Y. 2014)........................................................... 18

*Schwartz v. Dep't of Defense et. al.*, No. 15–CV–7077 (ARR),
2017 WL 78482, (E.D.N.Y. Jan. 6, 2017) .................................................................................... 22

*Schwartz v. U.S. Drug Enf't Admin.*, 692 F. App'x 73 (2d Cir. 2017) ..................................... 5, 12

*Silva v. City of New York*, No. 15-CV-6965 WFK ST, 2017 WL 2983239
(E.D.N.Y. May 18, 2017), *report and recommendation adopted*,
2017 WL 928472 (E.D.N.Y. Mar. 8, 2017).............................................................................. 18, 20

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170 (2d Cir. 2009)................................... 6, 17, 18, 19

*Smart v. City of New York*, No. 15 Civ. 1405 (RRM) (PK), 2017 WL 933080
(Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 928472
(E.D.N.Y. Mar. 8, 2017) .............................................................................................................. 17

*Smith v. Ashcroft*, No. 02-cv-0043, 2005 WL 1309149 (W.D. Mich. May 25, 2005) ................ 36

*Smith v. District of Columbia*, 466 F. Supp. 2d 151 (D.D.C. 2006)............................................. 25

*Summers v. Dep't of Justice*, 477 F. Supp. 2d 56 (D.D.C. 2007) ............................................ 9, 11

*Tax Analysts v. Dep't of Justice*, 965 F.2d 1092 (D.C. Cir. 1992) ........................................... 6, 11

*Thomas v. City of New York*, No. 14-CV-7513 (ENV) (VMS),
2017 WL 6033532 (E.D.N.Y. Dec. 1, 2017) .......................................................................... 17, 18

*United Am. Fin., Inc. v. Potter*, 770 F. Supp. 2d 252 (D.D.C. 2011) ...................................... 5, 13

*Urdaneta v. IRS*, 09-2405, 2011 WL 3659591 (D.D.C. March 17, 2011)..................................... 8

*Valencia v. U.S. Citizenship & Immigration Serv.*, No. 12-102,
2012 WL 3834938 (D. Utah Sept. 4, 2012).................................................................................... 8

*Weisner v. Animal & Plant Health Inspection Serv.*, No. 5:10-CV-00568-FL, 2012 WL 2525592 (E.D.N.C. June 29, 2012) ............................................................. 7

*Wilson v. Nomura Securities Intern. Inc.*, No. 01 CIV. 9290 RWS, 2002 WL 1560614 (S.D.N.Y. July 15, 2002). *rev'd in part on other grounds*, 361 F.3d 86 (2d Cir. 2004) ......................................................................................... 34

*Wise v. Kelly*, 620 F. Supp. 2d 435 (S.D.N.Y. 2008) ................................................. 19

*Wong v. Hunda Glass Corp.*, No. 09 CIV. 4402 RLE, 2010 WL 3452417 (S.D.N.Y. Sept. 1, 2010) ......................................................................................... 28

*Yea Kim v. 167 Nail Plaza, Inc.*, No. 05 CV 8560, 2009 WL 77876 (S.D.N.Y. Jan. 12, 2009) ............................................................................................. 18

Statutes

5 U.S.C. § 552(a)(4)(E)(1) ............................................................................................ 1

5 U.S.C. § 552(a)(4)(E)(i) ......................................................................................... 5, 6

5 U.S.C. § 552(a)(4)(E)(ii) ....................................................................................... 6, 23

5 U.S.C. § 552(b)(7)(b)(A) ........................................................................................... 2

5 U.S.C. § 552a(j)(2) .................................................................................................... 2

Pub. L. No. 110-175, 121 Stat. 2524 .......................................................................... 23

## PRELIMINARY STATEMENT

Defendant United States Drug Enforcement Administration (the "DEA") respectfully submits this Opposition to Plaintiff's Motion for Attorneys' Fees and Costs brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(1). Plaintiff, Mattathias Schwartz, seeks $978,568.75 in attorneys' fees and $10,430.52 in costs. As set forth in detail below, Plaintiff is not entitled or eligible to attorneys' fees pursuant to the FOIA, and assuming arguendo that the Court determines he is, Plaintiff's requested fees are excessive and unreasonable and any amount awarded should be substantially reduced from the amount sought.

## BACKGROUND[1]

On August 27, 2012, Plaintiff submitted a broad FOIA request to the DEA, requesting all documents relating to an operation in Ahuas, Honduras on May 10 and May 11, 2012. The request also sought information and documents relating to any subsequent investigation of that incident, including all video recordings and digital images of that incident (the "Ahuas Video"); the Report of Investigation; electronic communications between the Special Agent in Charge responsible for Honduras in May 2012 and other offices in the DEA including Headquarters; any internal communications and reports produced by the DEA's Office of Investigations; any internal documents, reports and findings from the DEA Review Board; and any internal documents, reports and findings from the DEA's Office of Professional Responsibility. In addition, in that same request, Plaintiff asked for the production of all Reports of Shooting Incidents taking place in Honduras or Honduran territorial waters between January 1, 2012 and the present. *See* Docket No. 30-1, Ex. A.

---

[1] Defendant assumes the Court's familiarity with the facts of this case as laid out in the Court's Memorandum & Order, January 12, 2016, Docket. No. 70.

At the time Plaintiff submitted his request, the DEA FOIA Office had a substantial FOIA request backlog.  As of September 2012, shortly after Plaintiff's FOIA request was submitted, 74% of pending requests were backlogged.  Plaintiff's request was placed in the queue to be processed in the order it was received.  Declaration of Kelleigh Miller in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs ("Miller Decl."), ¶ 27.  After receiving Plaintiff's FOIA request and throughout the production process, the DEA was responsive to the Plaintiff's inquiries while balancing its obligations to process other backlogged FOIA requests.  The DEA responded to inquiries from Plaintiff and his counsel, advising that its search for responsive documents was ongoing and that it would provide rolling partial releases of non-exempt responsive documents, as compiled and processed them.  Declaration of Katherine Myrick, Docket No. 30 ("Myrick Decl."), ¶¶ 9-19.

On September 6, 2013, Plaintiff filed this FOIA action, alleging that the DEA had failed to provide all responsive documents within the statutory time.  *See* Docket No. 1.  At this point, the DEA was continuing to review, analyze and process the large volume of documents and information responsive to Plaintiff's FOIA request.  Miller Decl. ¶¶9-11.

The DEA provided Plaintiff with the first partial release of records responsive to his request on October 7, 2013. Myrick Decl. ¶ 17.  The DEA released 12 pages of responsive records and indicated that it was withholding an additional 148 pages and one CD-ROM (the Ahuas Video), pursuant to FOIA Exemptions 7(A), 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. § 552(b)(7)(b)(A), (C)-(F), and the Privacy Act, 5 U.S.C. § 552a(j)(2).  The FOIA release letter that accompanied the records stated that additional records were still being processed and that the DEA would continue to make rolling partial releases of responsive documents, as compiled and

2

processed.[2]  *Id.* ¶ 17; Second Declaration of Katherine Myrick ("Second Myrick Decl.") ¶ 3,

Docket No. 35-1.  That release included responsive articles in the DEA's records that the Office

of Inspections processed and gathered.  Many of these over 400 pages of records concerned a

then still-open investigation.   In addition, some of these records were written in Spanish, and it

was necessary to obtain assistance from DEA personnel with working knowledge of Spanish for

purposes of translation and identification.  *Id.*

> The DEA's searches did not conclude until November 2012.  Second Myrick Decl. ¶ 6,

Docket No. 35-1.  As part of its efforts, the DEA searched the files of its Operations Division, as

well as the records of agents and other personnel in the DEA Honduras Office and the Office of

the Chief Inspector, paper records and electronic files in multiple DEA Headquarters offices

were searched, as well as the Honduran offices.  *See* Myrick Decl., ¶¶ 20-27.

> On June 20, 2014, the DEA sent another response to Plaintiff that released another 329

pages of responsive records and withheld another 135 pages pursuant to FOIA Exemptions 7(A),

7(C), 7(D), 7(E), and 7(F).  At this same time, the DEA continued to process the Spanish

language and other agency records in its continuing efforts to respond to Plaintiff's requests.  *Id.*

> On that very same day, the DEA filed its motion for summary judgment with respect to

the Ahuas Video and other records withheld under FOIA exemptions in the October 7, 2013

release.  Docket No. 28.  Plaintiff subsequently cross-moved. Docket No. 36-38; *see also* Docket

Nos. 35, 40; Minute Entry for Oral Argument on November 13, 2014.  Following oral argument

and supplemental briefing, during a June 22, 2015 telephone conference Plaintiff limited his

request relating to the Ahuas Video to the portion "that takes place after the tracked aircraft

---

[2] On November 6, 2013, Plaintiff filed a Supplemental Complaint, which added approximately
eight paragraphs regarding the DEA's response on October 7, 2012.  *See* Docket. No. 8.

touches down on the airstrip." Docket No. 67 at 1.  Six months later, on December 16, 2015,

Plaintiff filed a letter clarifying that his request was only narrowed with respect to the Ahuas

Video only and not his larger FOIA request for numerous other DEA records.  Docket No. 68.

On January 12, 2016, the Court issued its Memorandum & Order, denying the DEA's

motion for summary judgment concluding that the DEA had not demonstrated that it properly

invoked FOIA Exemption 7(E) to withhold the Ahuas Video, and directing the DEA to produce

the requested portion of the video with certain redactions.  The DEA obtained a stay and

appealed.[3]  The Second Circuit Court of Appeals held oral argument on April 6, 2017.

On May 24, 2017, the Inspectors General of the Departments of Justice and State issued

a joint review ("OIG Report") concerning three deadly force incidents in Honduras, including the

one depicted in the Ahuas Video.[4]  The DEA immediately disclosed this review to the Second

Circuit in a Rule 28(j) letter dated May 24, 2017.  16-cv-750; Docket No. 154.  On June 6, 2017,

the Second Circuit affirmed this Court's order on the basis that the joint review "describes many,

though not all, of the alleged law enforcement techniques and procedures the DEA asserts the

Ahuas Video would reveal." *Schwartz v. U.S. Drug Enf't Admin.*, 692 F. App'x 73, 74 (2d Cir.

2017).

---

[3] While the appeal was pending, on May 11, 2017, the DEA sent to the Plaintiff an additional
140 pages of responsive documents along with a "*Vaughn*" index for the release, which provided
reasonably detailed explanations as to why the withheld information falls within an exemption.
On October 31, 2017, the DEA sent the final release of 179 pages of responsive documents.
Plaintiff did not challenge these releases or any redactions therein.
[4] *Special Joint Review of Post-Incident Responses by the Department of State and Drug Enforcement
Administration to Three Deadly Force Incidents in Honduras*, U.S. Department of Justice & U.S.
Department of State (May 24, 2017), https://oig.state.gov/system/files/esp-17-01_-_joint_report_-
honduras.pdf.

On August 10, 2017, the DEA released the Ahuas Video to Plaintiff, who published portions of it on two media websites along with an article on the *New York Times* website and print newspaper.[5]

## LEGAL STANDARDS

The FOIA provides that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The district court has discretion on whether to award attorneys' fees and costs. *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009); *see also Carmody & Torrance LLP v. Def. Contract Mgmt. Agency*, No. 3:11-CV-1738 JCH, 2014 WL 5684391, at *1 (D. Conn. Nov. 4, 2014). The FOIA's fee provision "does not operate to award attorney fees and costs to every successful litigant." *United Am. Fin., Inc. v. Potter*, 770 F. Supp. 2d 252, 255 (D.D.C. 2011).

In determining the propriety of a plaintiff's FOIA fee application, courts consider three legal criteria: eligibility; entitlement; and reasonableness. *N.Y. Times Co. v. Cent. Intelligence Agency*, 251 F. Supp. 3d 710, 713 (S.D.N.Y. 2017). First, the court determines whether the plaintiff is eligible for an award of fees and costs by showing that he "substantially prevailed" in the litigation. *Id.* (citing *Pietrangelo*, 568 F.3d at 343 (quoting 5 U.S.C. § 552(a)(4)(E)(i))). Then, if eligible, the court must determine whether the plaintiff is entitled to fees and costs by weighing four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the

---

[5] Mattathias Schwartz, *D.E.A. Says Hondurans Opened Fire During a Drug Raid. A Video Suggests Otherwise.*, N.Y. Times (Oct. 23, 2017),
https://www.nytimes.com/2017/10/23/world/americas/drug-enforcement-agency-dea-honduras.html.

Government had a reasonable basis for withholding requested information.'" *Id.* at 713 (citing *Pietrangelo*, 568 F.3d at 343 (internal quotations omitted)). Finally, the court determines whether the fee requested is reasonable "under the lodestar approach applied to fee applications in the Second Circuit." *Id.* (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts*, 965 F.2d at 1094 (citing *Church of Scientology of California v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981)).

## ARGUMENT

## I.    PLAINTIFF IS NOT ELIGIBLE FOR OR ENTITLED TO AN AWARD OF FEES

The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "To be entitled to such an award, a litigant must first establish eligibility by showing that he 'substantially prevailed' in his lawsuit." *Pietrangelo*, 568 F.3d at 343. A claimant "substantially prevail[s]" by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). If a plaintiff establishes that it is "eligible," the court then applies a four-factor test to determine whether the plaintiff is entitled to fees under the FOIA: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding the requested information. *Id.*

As set forth below, Plaintiff is not eligible for, or entitled to, fees pertaining to the DEA's voluntary disclosure of documents previously withheld pursuant Exemption 7(A) for open

6

investigations and due to the DEA's document processing backlogs. In addition, Plaintiff has not demonstrated that he is entitled to fees because until the release of the OIG Report, the DEA had a reasonable basis for its invocation of 7(E) to withhold the Ahuas Video.

**A.    Plaintiff is Not Eligible to Recover Fees for Work Pertaining to Records Other than the Ahuas Video**

Plaintiff maintains that he substantially prevailed as to the responsive documents, in addition to the Ahuas video. *See* Pl. Mem. at 9. DEA voluntarily released all responsive documents previously withheld under FOIA Exemption 7(A) from the October 7, 2013 and June 20, 2014 releases once the investigations were concluded. Irrespective of this lawsuit, DEA would have released those documents at the conclusion of the investigations. *See* Miller Dec. ¶¶ 11, 16. Courts have found that the mootness of a previously asserted exemption does not constitute a voluntary change in position such to render a Plaintiff eligible for a fee recovery. *See, e.g., Andersen v. Leavitt, No. CIV A 03-6115 (DRH), 2007 WL 2874838, at \*14 (E.D.N.Y. Sept. 27, 2007) (denying request for attorneys' fees because "there has been no judgment on Plaintiffs' FOIA claim, and since all requested information has either been provided, is exempt from turnover, or is publically available, there cannot be").Mullen v. U.S. Army Criminal Investigation Command*, No. 1:10CV262, 2012 WL 2681300, at \*8 (E.D. Va. July 6, 2012) (determining that the closure of administrative investigation and not FOIA lawsuit led to release of documents originally withheld under Exemption 7(A)); *Weisner v. Animal & Plant Health Inspection Serv.*, No. 5:10-CV-00568-FL, 2012 WL 2525592, at \*3 (E.D.N.C. June 29, 2012) (concluding that the plaintiff was not eligible for fees when the defendant released records withheld pursuant to Exemption 7(A) after exemption no longer applied); *Urdaneta v. IRS*, 09-2405, 2011 WL 3659591, at \*1 (D.D.C. March 17, 2011) (noting that defendant had reasonable basis for using Exemption 7(A) to withhold documents).

7

In arguing that the lawsuit changed the DEA's position, Plaintiff claims that DEA protracted the litigation. Pl. Mem. at 9. Not only is this untrue – DEA did not forget or ignore Plaintiff's request – but even assuming arguendo that it is true, this supposition does not provide a basis for a finding that Plaintiff is entitled to attorneys' fees. Notwithstanding the records which DEA withheld pursuant to ongoing investigations under Exemption 7(A), the DEA processed requests in queue to the best of its ability given its limited resources and the breath of Plaintiff's request. Plaintiff's request came at a time when the DEA experienced a significant and unavoidable backlog of FOIA requests, which persisted throughout the pendency of the litigation. *See* Miller Decl. ¶¶ 27,28. When delay in release is due to backlog the lawsuit is not the cause of the release. *See Valencia v. U.S. Citizenship & Immigration Serv.*, No. 12-102, 2012 WL 3834938, at *2 (D. Utah Sept. 4, 2012) (finding that agency "followed its own normal procedures in producing the documents," and did not voluntarily or unilaterally change its position); *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 180 (D.D.C. 2011) (refusing to award fees despite "appreciat[ing] that the delays encountered by [plaintiff] were frustrating" when defendant's actions were reasonable).

## B.    Plaintiff is Not Entitled to Recover Fees

Even if a FOIA plaintiff satisfies the threshold eligibility standards, a court still must separately determine whether that plaintiff is entitled to an attorney fee award. *Bryant v. Cent. Intelligence Agency*, 818 F. Supp. 2d 153, 156 (D.D.C. 2011) ("The decision to award attorneys' fees and costs is left to the Court's discretion after consideration of the relevant factors."); *Found. v. Office of the Dir. of Nat'l Intelligence*, No. C 07-05278 SI, 2008 WL 2331959, at *3 (N.D. Cal. June 4, 2008) ("The determination of entitlement is left to the discretion of the Court."); *Summers v. Dep't of Justice*, 477 F. Supp. 2d 56, 63 (D.D.C. 2007) (quoting *Church of*

*Scientology of California*, 653 F.2d at 587) ("The entitlement inquiry allows the court to exercise its 'sound discretion' to grant or deny fees given the facts of particular cases.").

      With respect to the first factor, there was little or no public benefit derived from the case. As the Second Circuit found, the OIG Report, which was released to the public, contained most of the information about what was depicted in the video. *See* 16-750 Docket No. 163-1, June 6, 2017 ("[T]he Offices of Inspectors General… issued a joint review of…the drug interdiction raid depicted in the Ahuas Video. The … review … includes both extensive narrative discussion of the raid and screenshots from the Ahuas Video. It describes many, though not all, of the alleged law enforcement techniques and procedures the DEA asserts the Ahuas Video would reveal…"). Once the OIG issued its report, the Plaintiff's articles and publishing of the Ahuas Video did not provide any additional information for citizens to use in making political choices. In cases where the information released is already in the public domain, as was the case here on May 24, 2017 after the OIG release, courts have held that the public benefit factor does not weigh in favor of a fee award. *See, e.g., Morley v. CIA*, 828 F. Supp. 2d 257, 262-362 (D.D.C. 2011) (declining to award fees where Kennedy-assassination documents obtained by plaintiff through this FOIA litigation were already in the public domain) (vacated and remanded in 719 F.3d 689 (D.C. Cir. 2013) (concluding lower court failed to consider *Davy* court's analysis of public benefit factor)); *Laughlin v. Comm'r*, 117 F. Supp. 2d 997, 1002 (S.D. Cal. 2000) (declining to award fees for disclosure of document that is "readily accessible commercially"). The DEA respectfully requests that this Court recognize that the OIG's release, not this lawsuit, was the cause for the Anhuas Video's disclosure, and therefore the public did not reap any additional benefit from the Plaintiff's FOIA Request.

9

When evaluating the second and third entitlement factors, the Court should consider that Plaintiff received payment for his articles and thus derived a commercial benefit. Based on the record in this case, it is not unreasonable to determine that Plaintiff's motivations were not purely journalistic, or for public enlightenment, but rather for sensationalist reporting that would advance his career and could bring him greater recognition and commercial success. As Plaintiff himself points out, his intent from "day one" was to "write about the botched, fatal DEA raid in the [sic] Honduras." Pl. Mem. at 13. While Courts have recognized the value of news interest and public enlightenment, irrespective of the journalist's own commercial benefit, in this case, the information that formed the basis of Plaintiff's journalistic interest already was in the public domain through the OIG's voluntary disclosure – not as a result of this lawsuit. Absent a causal connection between Plaintiff's non-commercial interest, if any, and the OIG's ultimate disclosure of the information, this factor should not weigh in Plaintiff's favor.

Finally, the fourth factor—the reasonableness of the agency's withholding—also counsels against a fee award because the agency had a reasonable basis in law for concluding that the information at issue was exempt from disclosure. "Whether the government's withholding of the information requested had a reasonable basis in law should be an important factor in the court's exercise of its discretion under section 552(a)(4)(E)." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The reasonableness factor in the entitlement test considers whether the agency's opposition to disclosure "had a reasonable basis in law," and whether the agency "had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy v. Cent. Intelligence Agency*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (internal citations omitted). "The government's decision to withhold information may have a reasonable basis in law even if the information was ultimately not found to be exempt." *People*

10

*for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 130 F. Supp. 3d 156, 165

(D.D.C. 2015). *See also, e.g., Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 528 (D.C.

Cir. 2011) (noting that "the fact that [defendant's] initial nondisclosure decision rested on a solid

legal basis creates a safe harbor against the assessment of attorney fees"); *Tax Analysts v. Dep't

of Justice*, 965 F.2d 1092, 1097 (D.C. Cir. 1992) (upholding lower court determination that

defendant had reasonable basis in law for withholding tax decisions); *Dorsen v. U.S. Sec. &

Exch. Comm'n*, 15 F. Supp. 3d 112, 123 (D.D.C. 2014) ("Even if the plaintiff is otherwise

eligible, attorneys' fees may not be awarded if the government 'had a reasonable basis in law'

for withholding the requested documents."); *Nat'l Sec. Archive v. Dept. of Defense*, 530 F. Supp.

2d 198, 205 (D.D.C. 2008) (explaining that "[t]he government need only show that its position

had a colorable basis in law"). "[O]nce the government has established a reasonable basis in law

for resisting disclosure, courts may properly deny a FOIA plaintiff's motion for attorney fees

unless other factors affirmatively justify such an award." *Peter S. Herrick's Customs & Int'l

Trade Newsletter v. U.S. Customs & Border Prot.*, Civ. No. 04-377 (JDB), 2006 WL 3060012, at

*11 n.4 (D.D.C. Oct. 26, 2006) (emphasis in original) (quotation omitted). Failure to show that

the government's withholding lacked a reasonable basis in law "may foreclose a claim for

attorney fees." *Summers v. U.S. Dep't of Justice*, 477 F. Supp. 2d 56, 63 (D.D.C. 2007) (*citing

Chesapeake Bay Found. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216-17 (D.C. Cir. 1993)).

Here, the DEA's withholding of records relating to other investigations of shooting

incidents in Honduras pursuant to Exemption 7(A) was proper and had a reasonable basis in law.

The DEA released these records once the investigations and prosecutions related to the incidents

in Honduras were closed, including the independent OIG investigation. A discretionary release

of records does not imply that the agency lacked a reasonable basis for originally withholding

those records. *See Dorsen*, 15 F. Supp. 3d at 124. As the D.C. Circuit recognized, agencies should not be liable for fees where they release information as a discretionary matter because it would discourage transparency, and where an initial nondisclosure decision rests on a solid legal basis there should be a "safe harbor" from the assessment of fees. *Brayton*, 641 F.3d at 528. Not one of the asserted exemptions to over 400 pages of documents released in the spring and fall of 2017 pursuant to the Plaintiff's original request was questioned by Plaintiff.

Next, regarding the Ahuas Video, the DEA's position that the entirety of the video was protectable under 7(E) also was reasonable. Prior to the release of the OIG Report during the pendency of the appeal, none of the information in the public domain that Plaintiff identified undermined the reasonableness of the DEA's initial withholding of the Ahuas Video based on FOIA Exemption 7(E). Indeed, the Second Circuit ultimately held:

> "Subsequent to oral argument …the Offices of Inspectors General… issued a joint review of…the drug interdiction raid depicted in the Ahuas Video. The redacted, publicly available version of the review, **which the DEA filed with the Court**…includes both extensive narrative discussion of the raid and screenshots from the Ahuas Video. It describes many, though not all, of the alleged law enforcement techniques and procedures the DEA asserts the Ahuas Video would reveal…**In light of the disclosure,** these alleged techniques and procedures do not provide a basis for withholding the Ahuas Video under Exemption 7(E)."

*Schwartz*, 692 F. App'x at 74 (emphasis added). Importantly, the Second Circuit declined to rule "on whether the data appearing on screen in the Ahaus Video is protected by FOIA Exemption 7(E) because the district court has not yet definitively ruled on the issue, ***though we agree that 'producing specific flight data might reveal a protected technique or procedure.'***" *Id.* at FN1 (citation omitted) (emphasis added). In addition, "the government's position need not be correct to qualify as reasonable." *Peter S. Herrick's*, 2006 WL 3060012, at \*9. Here, the DEA faced a balancing of interests of protecting law enforcement and security techniques and procedures that

it maintained were not generally known to the public, and it reasonably interpreted precedents to reach a reasonable position.

Finally, the record does not support Plaintiff's baseless claim that DEA's behavior was "recalcitrant" and "obdurate" throughout the litigation. *See* Pl. Mem. at 15. The DEA's withholdings in records other than the Ahaus Video were due to substantive claims of exemptions ultimately unchallenged by Plaintiff – a fact Plaintiff fails to mention. In and of itself, the duration of a litigation may be due to multiple factors, and without more is insufficient evidence to establish that any delay in releasing records was due to any "obdurate behavior." *See United Am. Fin. Inc.*, 770 F. Supp. 2d at 258 (finding fact that "litigation stretched on for a period of almost four years … not evidence of 'obdurate behavior'").

## II.   PLAINTIFF'S REQUESTED FEES ARE EXCESSIVE AND UNREASONABLE

Assuming, *arguendo* that this Court finds that the Plaintiff has proven his eligibility for, and entitlement to, an award of fees for this *pro bono* FOIA lawsuit, the Plaintiff's counsel's claimed fees are grossly excessive and any fee award should be greatly reduced from the amount sought. On behalf of their *pro bono* client, Plaintiff, the law firm Jenner & Block asserts that it worked a total of 1,697.5 hours, amounting to $978,568.75.22 in attorneys' fees, and maintains that it sustained an additional $10,430.52 in costs. In light of the ultimate disposition of this case, including, but not limited to, the voluntary disclosure of a significant portion of requested documents and information, the requested fees are not only excessive and unreasonable, they were calculated using an inappropriate methodology.

The basis for setting a fee award is to multiply the number of hours reasonably expended on litigation by a reasonable hourly rate thus forming the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Second Circuit calculates "the lodestar—the product of a reasonable

hourly rate and the reasonable number of hours required by the case" to award a "presumptively

reasonable fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Pietrangelo*,

568 F.3d at 343; *see N.Y. Times Co.,* 251 F. Supp. 3d at 713.  To determine the hourly rate for

the lodestar, a "marketplace model" must be adopted, that is "the normal rate in the legal

community for substantially similar work by competent practitioners." *Ajluni v. Federal Bureau

of Investigation*, 1997 WL 196047, at *1 (N.D.N.Y. Apr. 14, 1997).  The public policy rationale

underlying the use of a "reasonable fee" is in order to "adequate to attract competent counsel,"

but being careful so that the ultimate award is one "which do[es] not produce windfalls to

attorneys." *Blum v. Stenson*, 465 U.S. 886, 893-94 (1984); *see Perdue v. Kennedy A.*, 559 U.S.

542, 552 (2010); *New York State Ass'n for Retarded Children, Inc., v. Carey,* 711 F.2d 1136 (2d

Cir. 1983) (finding an award to non-profit lawyers based upon billing rates charged by profit-

making lawyers inevitably produces a windfall. "The burden lies with the fee applicant to

produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience, and

reputation." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 80 F. Supp.

3d 1, 2 (D.D.C. 2015) (internal citation and quotation marks omitted).  "Counsel should make a

good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary." *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 810 F. Supp. 2d 267,

279 (D.D.C. 2011) (citing *Hensley*, 461 U.S. at 434).  In *Pennsylvania v. Delaware Valley

Citizens' Council*, the Court held that after the "lodestar" was determined the court could then

make adjustments to this figure, in light of "(1) the contingent nature of the case, reflecting the

likelihood that hours were invested and expenses incurred without assurance of compensation;

and (2) the quality of the work performed as evidenced by the work observed, the complexity of

the issues and the recovery obtained." 478 U.S. 546, 565 (1986) (*citing Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167).

Plaintiff has not met his burden in demonstrating that the requested award of $978,568.75 in attorneys' fees and $10,430.52 in costs, as supported by Jenner & Block's time records, are in line with rates in the Eastern District of New York for FOIA legal services. Instead of using lodestar rates for typical FOIA practitioners, Plaintiff's counsel submitted a fee application based on an hourly rates that are apparently customary for Jenner & Block's standard for profit corporate clients in the Manhattan legal market for complex commercial litigation. It is aximatic that these rates would be inapplicable to the calculation of fees for *pro bono* clients in Brooklyn in a FOIA litigation resting on the application of a single exemption.

In addition to using the exorbitant rates, Plaintiff's counsel also billed excessive hours to the litigation of a fairly straightforward application of an exception to the FOIA. Should this Court be inclined to grant Jenner's fee application, the number of hours awarded in response to any such application should be reduced to eliminate excessive and redundant billing. Specifically, Plaintiff's hours are unreasonable and excessive for the following reasons: 1) Plaintiff has requested compensation for an excessive number of attorneys working on a FOIA lawsuit that logged many unnecessary hours; and, 2) Plaintiff requests fees for acts that courts have held should not be compensated under FOIA, such as client relationship, document review and internal firm development.

### A.       Plaintiff's Hourly Rate for the Lodestar is Not the Prevailing Community Rate for FOIA Work

Plaintiff bears the burden of proving what a reasonable fee would be in this litigation. *Citizens*, 80 F. Supp. 3d 1, 2. Without offering any applicable comparable rates, Plaintiff

requests a blended hourly rate of $576.48, which was presumably derived from each attorney's then-prevailing rate:

- $725 to $950 for partner Brian Fischer;

- $515 to $845 for associate Carl Wedoff;

- $300 to $640 for associate Brittany Lamb;

- $500 for of counsel George Freeman;

- $490 for associate Michael Wadden; and

- $300 and $350 for the summer associates. *See* Fischer Decl. ¶¶ 4, 14,

As the only evidence of the "reasonableness" of the rates, Jenner submits a declaration essentially stating that these were the rates charged. *See generally* Fischer Declaration. However, the fact that Jenner decided to use corporate rates in a matter on behalf of a *pro bono* client is not a determining factor, because such a decision always would undermine the public policy against allowing FOIA-related litigation to generate a windfall for attorneys. Thus, the Fischer Declaration alone is insufficient to prove the reasonableness of the requested rates and, therefore, this Court should reduce them.

In determining the reasonable hourly rate for the lodestar, the Second Circuit presumes that a "reasonable, ***paying client*** would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 191 (2d Cir. 2008) (emphasis added). A plaintiff may rebut the district court's in-district presumption by demonstrating that "his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." Importantly, the district court also should consider "whether a lawyer is willing to offer his services in whole or in part *pro bono*, or

16

to promote the lawyer's own reputational or societal goals" in determining a reasonable hourly rate. *Arbor Hill*, 522 F.3d at 192.

The forum rule, which is well established in this Circuit, provides that "courts should use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons*, 575 F.3d at 174 (*citing Arbor Hill*, 493 F.3d at 119). "When faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Id.* at 176. To persuade a court to deviate from the forum rule, the party seeking fees must show "that the case required special expertise beyond the competence of forum district law firms." *Id.* (internal quotation marks omitted).  Plaintiff here has not and cannot rebut the *Simmons* presumption.

In the Eastern District of New York, reasonable hourly rates for partners range from $300 to $450 per hour, with the highest rate reserved for expert trial attorneys with extensive experience who are recognized experts in their fields.  *See Thomas v. City of New York*, No. 14-CV-7513 (ENV) (VMS), 2017 WL 6033532, at *5 (E.D.N.Y. Dec. 1, 2017); *Smart v. City of New York,* No. 15 Civ. 1405 (RRM) (PK), 2017 WL 933080, at *3 (Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 928472 (E.D.N.Y. Mar. 8, 2017); *John v. Demaio*, No. 15 CV 6094 (NGG) (CLP), 2016 WL 7469862, at *6 (E.D.N.Y. Sept. 29, 2016), *report and recommendation adopted*, 2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015) (Mauskopf, J.) (awarding a $350 hourly rate to an attorney with sixteen years of experience in general civil litigation); *Favors v. Cuomo*, 39 F. Supp. 3d 276, 306 (E.D.N.Y. 2014) (awarding $400 hourly rate to a partner with sixteen years of experience); *Lochren v. County. of Suffolk*, 2010 U.S. Dist. LEXIS 28288, at * 7 (E.D.N.Y. Mar. 23, 2010) (awarding attorneys with 40-50 years of experience in civil rights

litigation $450 an hour); *see also Silva v. City of New York*, No. 15-CV-6965 (WFK) (ST), 2017

WL 2983239, at *2 (E.D.N.Y. May 18, 2017), *report and recommendation adopted*, 2017 WL

2973959 (E.D.N.Y. July 12, 2017) ("[R]ates higher than $350 per hour are generally reserved for

the unusually expert litigation of civil rights claims or special circumstances." (internal quotation

marks and citation omitted).

Awards for associate hours in this district typically range from $100 to $325 per hour.

*See Friedman v. Self Help Cmty. Servs., Inc.*, No. 11-CV-3210 (NGG) (JO), 2017 WL 663539, at

*2 (E.D.N.Y. Feb. 17, 2017); *see also Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y.

2014) (collecting cases). Fee awards at or above the upper end of this scale are only proper for

associates with particularly valuable experience. For example, a magistrate judge in this district

recently recommended awarding $200 to a junior associate in a civil-rights action because "his

qualifications and experience in the short time since graduating from law school ... justif[ied] an

hourly rate on the high end of the range for junior associates." *Thomas*, No. 14-CV-7513 (ENV)

(VMS), 2017 WL 6033532, at *5.  Even accounting for the self-described high qualifications and

excellence of the Jenner & Block attorneys, the application of the blended rate for the partner,

associates and summer associates is well above the typical range in this district (and even the

Southern District).[6]

---

[6] Even using the higher rates awarded in the Southern District of New York ((*Simmons*, 575 F.3d
at 172) (observing Eastern District's prevailing rates are "substantially lower" than Southern
District's)), the requested rates here are comparatively unreasonable.  *See, e.g.,E.S. v. Katonah-
Lewisboro School Dist.*, 796 F. Supp. 2d 421, 429-30 (S.D.N.Y. 2011) (finding a proposed
hourly rate of $415 unreasonably high, as awards "exceeding $400 to attorneys in civil rights
cases . . . are only warranted in 'unusually difficult and complex' cases"); *Yea Kim v. 167 Nail
Plaza, Inc.*, No. 05 CV 8560, 2009 WL 77876, *8-9 (S.D.N.Y. Jan. 12, 2009); (awarding lead
counsel $200 per hour in "procedurally simple" labor case involving straightforward motion
practice and hearings, $175 per hour to attorneys who graduated between 2001 and 2003, and
$150 to attorneys who graduated in 2006); *Wise v. Kelly*, 620 F. Supp. 2d 435, 445-47 (S.D.N.Y.
2008) (awarding $425 per hour to lead counsel in a "more difficult and complex than the average

"If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge . . . m[ay] allow only an hourly rate which local attorneys would have charged for the same service. On the other hand, there are undoubtedly services which a local attorney may not be willing or able to perform.  The complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Simmons*, 575 F.3d at 176 (quotations omitted); Plaintiff retained a "top firm operating in the New York market" (Pl. Mem. at 20) that commands top-dollar rates, when a local attorney in Brooklyn, Queens or Long Island, with FOIA experience could have competently performed the services. *See Brady v. Wal-Mart Stores, Inc.*, 2010 WL 4392566, at *5 (E.D.N.Y. Oct. 29, 2010) (Orenstein, M.J.) (("The market rate for civil rights litigation services is lower than that for some other areas of practice, particularly those involving more affluent corporate clients"); *see also House v. Wackenhut Servs., Inc.*, No. 10 CIV. 9476 CM FM, 2012 WL 4473291, at *2 (S.D.N.Y. Sept. 27, 2012) (using market rates "for similar services by lawyers of reasonably comparable skill, experience and reputation" to determine a reasonable hourly billing rate).  While Jenner & Block may contend that no other private attorneys in the Eastern District of New York would have worked as many hours on a *pro bono* basis, however, it is simply not credible that no other firm or solo practitioner could ably handle the matter given the density of qualified attorneys within the district.

Moreover, regardless of the firm's opinion of its own "widely-recognized, well-earned reputation for excellence" (Pl. Mem. at 20), Jenner & Block has not represented that any their

---

civil rights case"); *Heng Chan v. Sung Yue Tung Corp.*, No. 03–6048, 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) (awarding lead counsel, a partner from Skadden, Arps, Slate, Meagher and Flom, LLP, with sixteen years of litigation experience $450 per hour, because the case involved "a host of witnesses and parties, numerous boxes of documents, and depositions and investigations conducted in four languages").

attorneys had any specialized knowledge or any prior experience with FOIA law at all. Presumably this is because the eight attorneys and three summer associates had little to no experience with the FOIA whatsoever before this case. Of course, it is their precise lack of experience that required them to educate themselves about the FOIA, which in turn generated the incredible number of billing hours (discussed more fully below in Section B). While it was Jenner & Block's prerogative to staff the case in this way to train its eight FOIA-inexperienced attorneys in this case, its staffing decisions should not make these excessive hours and fees a burden for the taxpayers to bear.

Under this analysis, Jenner & Block's fee calculation based on the attorney or summer associate's then-prevailing hourly billing rates exceed reasonable rates awarded under fee shifting statutes in this District. As an initial matter, it is patently excessive for Jenner to request top billing rates for Carl Wedoff, an associate practicing since 2011 (after a clerkship and LLM degree) who has no noted FOIA experience or oral advocacy experience prior to bankruptcy cases in 2017 but was billed at rates ranging from $515 to $845. *See Carl Wedoff*, JENNER & BLOCK, https://jenner.com/people/CarlWedoff. These requested rates far exceed the reasonable hourly rate for a partner - no more than $350 in this District. *See Silva*, 2017 WL 2983239, at *2; *John*, 2016 WL 7469862, at *6. Indeed, the requested rates for the attorneys in this matter far exceed those for an attorney experienced in FOIA in the Manhattan market. *See N.Y. Times Co.*, 251 F. Supp. 3d 710, 715 (S.D.N.Y. 2017) (awarding "$650 for a ***seasoned FOIA litigator with 14 years' experience*** and $400/hour for two junior attorneys") (emphasis added). While this case involved knowledge of FOIA law and oral advocacy skills to argue the summary judgment motion and appeal, Plaintiff makes no claim that the top-billing associate possessed this type of knowledge or any relevant FOIA litigation experience prior to this matter. This case also lacked

20

any witnesses or other discovery complexities.  The district court and appellate arguments

concerned only the DEA's application of Exemption 7(E) to withhold the Ahuas Video.  As

such, this Court should not compensate for attorney time at the same level of a seasoned FOIA

litigator.

In addition, the Court should greatly reduce the rate for non-admitted summer associates.

"Fees for certain administrative tasks and factual research ought to be calculated using a lower

paralegal billing rate." *N.Y. Times Co.*, 251 F. Supp. 3d at 715. Jenner & Block's request for

$300 (2014) and $350 (2017) an hour as the rate for summer associate work is unreasonable. *See*

*Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill*

*Improvement & Safety Funds v. Triple H Concrete Corp.*, No. 15 Civ. 6687 ARR VMS, 2018

WL 1178036, at *11 (E.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, No. 15

Civ. 6687 ARR, 2018 WL 1175151 (E.D.N.Y. Mar. 6, 2018) (second alteration in original)

(collecting cases) (reducing the proposed $200 rate for law clerks to $100 per hour, as

"[n]umerous cases in the Eastern District [of New York] hold that the hourly rates awarded to

law clerks . . . should be comparable to those awarded to paralegals"); *see also Elec. Privacy*

*Info. Ctr. v. United States Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 61 (D.D.C. 2013)

(finding "work by graduates who have not yet been admitted to any bar shall be compensated at

the paralegal/clerk rate" of the "*Laffey*" matrix); *Blackman v. District of Columbia*, 677 F. Supp.

2d 169, 175 (D.D.C. 2010) (awarding law firm's paralegal rate for services of non-barred

summer associate, which apply to services performed by other non-lawyers, whether "they be

paralegals, law students, or recent graduates who have not yet been licensed to practice law").

Thus, this Court should reduce the hourly billing rates for summer associates to $100 an hour at

most.

Plaintiff, who bears the burden to produce evidence that his requested rates comports with rates in the Eastern District of New York for FOIA litigators, has failed to submit such information. "The district court also considers other rates which have been awarded in similar cases in the same district." *Ajluni*, 1997 WL 196047, at *1. *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate."). Although there are no recent attorney fee awards in FOIA cases in the Eastern District of New York,[7] awards in other districts may be instructive. Under existing precedent, awards for these types of cases are in the tens of thousands of dollars, not in the hundreds of thousands of dollars or nearly a million dollars, like the windfall that Plaintiff's counsel is seeking. *See, e.g., N.Y. Times Co.*, 251 F. Supp. 3d at 716 (awarding $51,909.86 for a contested FOIA case which lasted over three years); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 416 (D.D.C. 2015) (awarding $82,513.42); *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 163 (D.D.C. 2015) (awarding $29,635 in attorneys' fees and costs).

While Plaintiff argues that not awarding market rates will discourage future *pro bono* representation and will diminish Jenner & Block's vital *pro bono* practice (Pl. Mem. at 20-21), he fails to acknowledge the spirit of *pro bono* representation: public service without

---

[7] Plaintiff's prior FOIA action against the DEA lasted over a year from the filing of the Complaint to the settlement for $7,150 for attorney's fees and $350 in costs. *See* Docket No. 16, Stipulation and Order of Settlement and Dismissal at 1, *Schwartz v. U.S. Drug Enf't Admin.*, No. 12-cv-06229 (BMC) (E.D.N.Y. Feb. 24, 2014). For that case and a subsequent FOIA litigation in which he did not prevail, Plaintiff retained the services of the Media Freedom and Information Access Clinic at Yale Law School. *See Schwartz v. Dep't of Defense et. al.*, No. 15–CV–7077 (ARR), 2017 WL 78482, (E.D.N.Y. Jan. 6, 2017).

compensation.  Here an order for the DEA[8] pay almost one million dollars will only burden the public and inhibit the agency's law enforcement mission.  "[F]ees that may not be "unreasonable between a first class law firm and a solvent client, are not [always] supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States."  *In re Mullins*, 84 F.3d 459, 466 (D.C. Cir. 1996) (quoting *In re North*, 8 F.3d 847, 852 (D.C. Cir. 1993)).

    In addition, in *Arbor Hill*, the Second Circuit directed district courts to consider whether "an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration)" or if plaintiff's counsel might expect "other returns (such as reputation, etc.)" from the representation as a factor to be considered in calculating the presumptively reasonable fee.  522 F.3d at 184.  Jenner & Block worked and submitted its billing records without regard to an expectation of payment or the usual client-scrutiny.  Aside from any altruistic intentions, the law firm's interest in the matter undoubtedly included public relations and marketing reasons.[9]  *See* Pl. Mem. at 21.  Although an attorney's willingness to take a case *pro bono* is not itself a basis for reducing fees, a discount in fees is appropriate insofar as the market rate for such litigation services is lower than the market rate for services provided to high-profile corporate clients.  *See Pastre v. Weber*, 800 F. Supp. 1120,

---

[8] Pursuant to Section 4 of the OPEN Government Act of 2007, FOIA attorney fees are paid directly by the agency, using funds "annually appropriated for any authorized purpose."  OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, § 4 (codified at 5 U.S.C. § 552 (a)(4)(E)(ii).  *See also* Miller Decl. ¶ 17.
[9] The case is mentioned in at least four pages of the Jenner & Block website:
*Second Circuit Rules in Favor of Firm's Investigative Journalist Client Seeking DEA Video*, JENNER & BLOCK (June 6, 2017) - https://jenner.com/library/posts/17048;
*Firm Wins Victory for Pro Bono Client Seeking DEA Video*, JENNER & BLOCK (Jan. 13, 2016) - https://jenner.com/library/news/14745;
https://jenner.com/people/BrianFischer/work; and
https://jenner.com/people/CarlWedoff/work

1125 (S.D.N.Y. 1991) (concluding that defendant should not be required to pay the rates usually

charged to clients such as General Motors or IBM, but should be required to pay the rates that

"would have been charged by a competent attorney specializing in civil rights litigation").

In sum, any fees should be awarded at these hourly rates: $375 per hour for Brian

Fischer, $275 per hour for Carl Wedoff and George Freeman, $175 per hour for Brittany Lamb

and Michael Wadden and no more than $100 an hour for summer associates. *See Brady*, 2010

WL 4392566 at *5 (finding "[f]ee awards in this district in recent years have approved hourly

rates in the range of $200 to $400 for partners, $100 to $295 for associates, and $70–$100 for

paralegal assistants") 2010 WL 4392566, at *5; *see Janus v. Regalis Const., Inc.*, No. 11–CV–

5788 (ARR), 2012 WL 3878113, at *11 (E.D.N.Y. July 23, 2012)(finding "*Brady's* ranges

bookend reasonable rates in the Eastern District.").

### B.    Plaintiff's Requested Fee Should be Reduced Because the Records Show Excessive Number of Attorneys, Hours and Redundant Services

An important factor in the court's determination of an award of attorneys' fees is the

number of hours reasonably expended. Duplicative billing entries and billing entries alleging an

excessive amount of time for the tasks completed are grounds for a reduction in attorneys' fees

awarded in this district. *See Murray v. Comm'r of the State of N.Y. Dep't of Educ.*, 354 F. Supp.

2d 231, 235-41 (E.D.N.Y. 2005) (Spatt, J.).

#### i. Overstaffing

While claiming that Jenner & Block's "core team consisted of two to four attorneys,"

(Fischer Decl. ¶ 6), Plaintiff seeks fees for an astounding 1,697.5 hours of work, on behalf of a

single *pro bono* client, for one case that litigated the application of a single FOIA Exemption, but

nevertheless that was performed by no less than five different attorneys – Brian Fischer, Carl

Wedoff, George Freeman, Michael Wadden, and Brittany Lamb (who also billed as a non-

admitted summer associate), and three former non-admitted summer associates (Alexandra

Bursak, David Clark, Nicole Taykhman).  As described in more detail below, and as evident

from Jenner & Block's own billing records, multiple lawyers and summer associates billed to the

matter in a single day.

     Overstaffing this case resulted in over-billing and redundancy in legal work, which must

be accounted for in determining an appropriate fee award.  *See Cush-Crawford,* 94 F. Supp. 2d at

302; *see also Am. Immigration Council.*, 82 F. Supp. 3d at 410 (determining that where the time

sheets were "replete with conferences among co-counsel attempting to coordinate strategy" that

the fee award should account for such duplication of work). *Smith v. District of Columbia*, 466 F.

Supp. 2d 151, 158 (D.D.C. 2006) (concluding that a 25% across-the-board reduction in fee was

appropriate to account, in part, for "significant overstaffing" in a civil rights matter); *Davis Cty.*

*Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Env't Prot. Agency*, 169 F.3d

755, 761 (D.C. Cir. 1999) (*per curiam*) (reducing sought fees by approximately 50%, citing as

one reason the "unusually high number of attorneys reviewing and editing briefs").

     Notably, this is not a case where extensive attorney cross-coordination was necessitated:

each of the eight timekeepers in this matter represented just one client and faced as its opposition

only one AUSA at a time as litigation counsel for the DEA.  This case should not have required

the use of such a large team; no more than two attorneys' work should have been necessary at

any given time.  Nevertheless Jenner & Block's bills here include no fewer than 11 conferences

between attorneys in the firm to discuss vague case strategy – for apparently hours at a time:[10]

---

[10] As discussed below, these entries contained numerous tasks under one lump number of hours,
rendering it impossible for the DEA or the Court to determine the nature of tasks performed and
the amount of time reasonably required to perform those tasks.  Such vagueness alone justifies a
reduction in the amount of attorneys' fees awarded.  *See Mr X v. New York State Educ. Dep't*, 20
F. Supp. 561, 564 (S.D.N.Y. 1998).

**Carl Wedoff**

- 12/16/13:     "…conference with G. Freeman re discovery strategy" (1.25 hours; $643.75)
- 7/9/14:      "Conferred with G. Freeman re brief strategy and NYT case" (.25 hours; $142.50)
- 7/25/14:     "…conferred with **L. Bowen** re exhibit strategy" (8 hours; $4,560)
- 9/24/14:     "Revised reply brief, conferred with B. Fischer re same; conferred with client re same; exchanged emails with B. Fischer, **A. Olejnik, S. McNally**, and client …"
- 10/13/14     "Conferred with **A. Olejnik** re oral argument strategy…" (.5 hours; $285)
- 11/3/14:     "Conferred with **A. Olejnik** re oral argument strategy" (.25 hours; $142.50)
- 12/16/14:    "Conferred with B. Fischer re edits to supplemental brief;
-              conferred with client re same; conferred with A. Olejnik and S. McNally re review assistance …." (9 hours; $5,130)
- 4/18/16      "Conferred with B. Fischer and B. Lamb re strategy and next steps…" (1.5 hours; $1,057.50)
- 6/27/16:     "…conferred with client re appeal strategy" (3 hours; $2,115)
- 6/28/16:     "Conferred with B. Lamb and A. Bursak re sealing opposition and brief strategy (3.25 hours; $2,291.25)
  6/29/16:     "…conferred with B. Fischer, B. Lamb, and A. Bursak re briefing strategy and sealing opposition" (3.5 hours; $2,467.5)

(entries excerpted and emphasis added).[11]

**George Freeman**

- 7/2/14:      "Attended meeting with C. Wedoff, B. Lamb re letter and strategy re motion…" (2.75 hours; $1,375)

**Brian Fischer**

- 2/11/16:     "Discussed case strategy and next steps with team" (.5 hours; $412.5)

**Brittany Lamb**

- 1/13/16:     "Reviewed FOIA opinion; met with B. Fischer and C. Wedoff re FOIA Opinion" (1.5 hour; $660)

---

[11] It is not evident why these strategy meetings with certain individuals inside or outside the firm, who have not been identified as among the eight "core members" of the team, were necessary. *See also e.g.,* entries on 3/4/14, 3/10/14, 3/12/14, 4/7/14, 4/29/14, 5/29/14, 11/3/14, 11/7/14, 11/10/14, 11/12/14, 11/13/14, 11/16/14, 12/5/14, 12/18/14 (billing for conferences with George Freeman, A. Olejnik, A. Perry, J. Lao, G. Stertz, T. Garza).

- 2/11/16:      "Met with B. Fischer and C. Wedoff re FOIA next steps" (.5 hours; ($220)[12]

Where in a more complex case, this amount of coordination between attorneys may be reasonable, in a straightforward FOIA litigation this overstaffing resulted in over-billing and redundancy.  The excessive number of attorneys working on this matter should be accounted for in determining an appropriate fee award. *See Am. Immigration Council*, 82 F. Supp. at 410 (D.D.C. 2015).

### ii.      Excess Number of Hours

"When determining the number of reasonable hours expended during litigation, a court may exclude hours found to be 'excessive, redundant or otherwise unnecessary.'" *Katonah-Lewisboro School Dist.*, 796 F. Supp. 2d at 431 (citations omitted).  "The critical inquiry is whether, at the time the worked was performed, a reasonable attorney would have engaged in similar time expenditures." *M.C. ex rel. E.C. v. Dep't of Educ. of City of New York*, No. 12 CIV. 9281 (CM) (AJP), 2013 WL 2403485, at *8 (S.D.N.Y. June 4, 2013), *report and recommendation adopted*, 2013 WL 3744066 (S.D.N.Y. June 28, 2013).

A court may also make a percentage reduction because the "stated number of hours is greater than that which should been required for the work produced." *Katonah-Lewisboro*, 796 F. Supp. 2d at 431; *see also N.Y. Times Co.*, 251 F. Supp. 3d at 715 (reducing plaintiff's fee award by $5,000 as "The Times need not have had attorneys perform all such tasks, and could also have been more efficient with its time"); *Wong v. Hunda Glass Corp.*, No. 09 CIV. 4402

---

[12] *See also e.g.,* entries on 6/17/14, 6/23/14, 6/26/14, 7/2/14, 7/7/14, 7/8/14, 7//21/14 (billing for preparing for and attending conferences with George Freeman and Carl Wedoff) and entries on 6/26/14, 7/22/14, 1/15/16 (billing for "[sitting] in on call to the court."). Fischer Decl. Ex. A.

RLE, 2010 WL 3452417, at *4 (S.D.N.Y. Sept. 1, 2010) (applying a 15% reduction where "an experienced attorney should not have required as much time).

Here, Plaintiff's attorneys spent approximately 21.25 hours (for which $11,008.75 is sought) combined on drafting and reviewing the straightforward complaint alone and an additional 40.5 hours ($20,726.25) on the supplemental complaint, which only added nothing more than eight short paragraphs and some additional language about the DEA's first FOIA response. *See* Docket No. 8. Moreover, the Complaint included standard "boilerplate" paragraphs found in FOIA complaints, which could have been derived from numerous public suits, or even from Plaintiff's prior 2012 FOIA complaint against the DEA (*compare* Docket No. 1, *with* Docket. No. 1, Complaint, *Schwartz v. U.S. Drug Enf't Admin.*, 1:12-cv-06229-BMC (E.D.N.Y. Feb. 24, 2014)), leaving the factual background as the only component of the complaint needing to be developed from scratch. Due to the ordinary nature of Plaintiff's Complaint, any fee award should only include reasonable hours spent on drafting and revising, which the DEA suggests would be 20 hours total for the Complaint and Supplemental Complaint rather than the billed amount of 61.75 hours.

The premise and caselaw above extends to the excessiveness of time spent by attorneys drafting, editing and revising the summary judgment motion. While it is impossible to render an exact figure for number of hours spent on this motion due to Jenner & Block's practice of block billing, it is clear from a review of the collective entries from July through September for Brian Fishcher, Carl Wedoff, Brittany Lamb, and George Freeman that the firm billed well over 150 hours, which is more than excessive. *See N.Y. Times Co.*, 251 F. Supp. 3d at 715 (reducing request for 55 hours for summary judgment motion practice by $5000 even where the FOIA argument was fact and time-intensive).

Similarly, the time spent by attorneys drafting and editing the motion for fees, along with the associated fee declarations, is excessive. While Fischer claims Plaintiff "is not seeking compensation for the considerable time spent researching the availability of fee (as part of assessing the propriety of this Motion)," his own time entries belie this with an entry in 2015 for reviewing a memo on fees. *See* Fischer Decl. Ex. A at 12 (7/8/15, 1 hour, $755 "Reviewed memo on fees and appellate issues"). The Jenner & Block attorneys claim approximately 103.25 or $71,707 combined hours of billable time on this fee motion. As broken down below, a not insignificant amount of time on fees include correspondence regarding potential settlement of fees.

**Carl N. Wedoff**

- 8/7/17:     "… corresponded with AUSA Jolie Apicella re document requests fees…" (3.75 hours; $2,943.75) (other block billed entries omitted)

- 10/12/17:   "Corresponded with Assistant U.S. Attorney J. Apicella re status of DEA response to document and fee proposals." (.25 hours; $196.25)

- 11/30/17:    "Corresponded with AUSA J. Apicella, B. Fischer, and B. Lamb re upcoming case conference, settlement, and fee litigation…"  (1.5 hours; $1,177.5)

- 2/12/18:     "Draft declaration of B. Fischer in support of fee motion." (1 hour; $845)

**David J. Clark**

- 6/6/17:     "…met with B. Fischer, C. Weedof [sic], and B. Lamb about next steps in litigation and FOIA fees" (.75 hours; $262.5)

**Brittany Lamb**

- 2/10/18 – 2/14/18     (same description for entries) "Drafted fee motion" (17 hours; $10,880)

- 2/15/18-2/27/18     (same description for entries) "Revised fee motion" (20 hours; $12,800)

**Brian J. Fischer**

- 2/19/18:     "Reviewed draft fee motion" (1 hour; $950)

- 2/21/18:     "Continued review of draft fee motion; conferred with team about the same." (1.25 hours; $1,187.5)

- 2/26/18:     "Edited/revised fee petition brief" (5 hours; $4,750)

- 2/27/18:     "Edited/revised portions of fee petition submission" (3.5 hours; $3,325)

- 2/28/18:     "Edited/revised portions of fee petition submission" (3 hours; $2,850)

Fischer Decl., Ex. A.

The *NY Times* court found that 17 hours of time total on a fee motion to be excessive. *See N.Y. Times Co.*, 251 F. Supp. 3d at 715. Here, first year associate Michael J. Wadden alone billed 24.25 hours or $11,882.5 to the drafting of the fee motion.

In addition, Plaintiff's attorneys' bills include time spent on document production review and settling the case after the Ahuas Video was provided. After the DEA released the Ahuas Video on August 1, 2017, Jenner & Block billed a total of 134.75 hours, amounting to $96,623.75, on settlement and review of the production. The following billing entries specifically mention settlement after release of the Ahuas Video:

**Carl Wedoff**

- 8/1/17      "Corresponded with U.S. Attorney's office, client, and B. Lamb re settlement discussion." (.75 hours; $588.75)

- 8/2/17:     "Prepared email memoranda to client and B. Fischer re settlement strategy and next steps." (2 hours; $1,570)

- 8/4/17:     "Conferred with Assistant U.S. Attorney J. Apicella and B. Lamb re case status and settlement; corresponded with client and B. Fischer re same." (1.75 hours; $1,373.5)

- 9/26/17     "Call with J. Apicella and B. Lamb re settlement and open issues…" (1.25 hours; $981.25)

- 11/8/17:       "Correspond with B. Lamb re research for settlement discussions" (.25 hours; $196.25)

- 11/28/17:      "Corresponded with client re review of DEA document productions and next steps in settlement negotiations" (.25 hours; $196.25)

- 11/29/17:      "Corresponded with client re review of DEA document productions and next steps in settlement negotiation"  (.25 hours; $196.25)

- 11/30/17:      "Corresponded with AUSA J. Apicella, B. Fischer, and B. Lamb re upcoming case conference, settlement, and fee litigation; corresponded with client re same." (1.5 hours; $1,177.5)

- 12/6/17:       "Confer with AUSA J. Apicella and B. Lamb re December 8 status conference and fee settlement; confer with B. Lamb re same." (.5 hours; $392.5)

- 12/8/17:       "…confer with AUSA J. Apicella re settlement…" (2.5 hours; $1,962.5)

- 12/13/17:      "Correspond with AUSA J. Apicella re settlement conference…" (.25 hours; $196.25)

Carl Wedoff billed 49.25 hours, amounting to $41,616.25, between August 1, 2017 and December 13, 2017, on settlement issues, despite the fact that Plaintiff did not raise any issue with the DEA's application of exemptions or redactions as to the released documents.  Defendant requests that the Court consider the excessive time spent on this process in conjunction with the systematic inflation of total requested billable hours throughout the entirety of this matter.

Finally, Jenner & Block billed an excessive number of hours preparing Carl Wedoff for two oral arguments before the district and one before the Second Circuit.  Specifically, the firm billed a total of 50.75 hours ($29,713.75) on mooting oral arguments alone, excluding the hundreds of hours billed for otherwise preparing for and attending the oral arguments – none of which lasted over an hour.

The overstaffing and duplication of attorney work in this matter, along with the excessive

billing described above, warrants a reduction of at least 40% of the number of hours for which

fees are to be awarded to Plaintiff's attorneys.

**B.     Plaintiff's Requested Fee Should be Reduced Due to "Block Billing" and Vague Descriptions of Tasks Allegedly Performed**

The Plaintiff's timekeeping practices also should be scrutinized.  Plaintiff's time should

be significantly discounted because of Jenner & Block's pervasive block-billing, which is billing

a large number of hours for multiple tasks.   Block-billed time entries have been held particularly

improper, because they "have a tendency to obfuscate the amount of time expended on distinct

tasks and introduce an element of vagueness ... [,] making it difficult to determine if the reported

hours are duplicative or unnecessary." *Miroglio S.p.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d

307, 313 (S.D.N.Y. 2009) (internal quotations omitted). When these kind of excessive entries

appear, a district court may reduce a fee application by a set percentage to "trim[] fat from a fee

application." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust

Fund*, 450 F.3d 91, 96 (2d Cir. 2006).  The vague, excessive, and duplicative block-billed entries

submitted here should be significantly reduced. *See* Fisher Decl., Ex. A, *See, e.g.*, Carl Wedoff

entry 5/25/17:

> "Conferred M. Schwartz re IG report and next steps; conferred with M. Hellman re same; conferred with C. DeCell re same; corresponded with B. Fischer and B. Lamb re same; conferred with W. Havemann (DOJ) re same; reviewed and analyzed case law re supplemental filings." (3.25 hours, $2,551.25)[13]

---

[13] *See also* Carl Wedoff entries 9/6/13, 10/4/13, 10/30/13, 10/31/13, 11/6/13, 12/9/13, 12/19/13, 1/6/14, 1/7/14, 1/8/14, 1/9/14, 1/31/14, 2/18/14, 3/7/14, 3/12/14, 4/7/14, 4/29/14, 6/25/14, 7/2/14, 7/14/14, 7/15/14, 7/16/14, 7/17/14, 7/22/14, 7/23/14, 7/24/14, 7/25/14, 7/28/14, 8/29/14, 9/8/14, 9/24/14, 11/13/14, 11/14/14, 11/16/14, 11/18/14, 12/12/14, 12/16/14, 12/22/14, 4/20/15, 4/24/15, 5/21/15, 5/26/15, 5/27/15, 6/22/15, 1/12/16, 1/15/16, 3/9/16, 3/10/16, 4/6/16, 4/6/16, 5/27/16, 6/20/16, 6/21/16, 6/22/16, 6/23/16, 6/27/16, 6/28/16, 6/29/16, 6/30/16, 8/23/16, 8/31/16, 9/8/16, 9/15/16, 9/19/16, 9/20/16, 9/21/16, 9/22/16, 9/23/16, 9/27/16, 10/4/16, 10/6/16, 11/2/16, 3/23/17,

Entries like these are improper considering the nature of the tasks and the inflated hourly rates of all the attorneys. Reductions are appropriate based on such entries. *See, e.g., Molefi v. Oppenheimer Trust*, 2007 WL 538547, at *7–8 (E.D.N.Y. Feb. 15, 2007) (applying a 15% reduction).

Courts require specificity in billing entries in order to award fees, and to determine a reasonable award. *See Pvatt v. Jean*, 2010 WL 3322501, at *5 (E.D.N.Y. Aug. 17, 2010) (Spatt, J.). When a court is unable to determine the reasonableness of a fee application due to vagueness, a percentage reduction is appropriate. *See id.* "Hours may also be rejected when work descriptions are so general that a court cannot ascertain the reasonableness of the time claimed." *Davis Cty. Solid Waste Mgmt*, 169 F.3d at 761. "To satisfy the burden of showing that hours claimed were reasonably expended on a case, a petitioner must submit 'sufficiently detailed information about the hours logged and the work done' and it is 'insufficient to provide the . . . Court with very broad summaries of work done and hours logged.'" *Am. Petroleum Inst. v. U.S. Env't Prot. Agency*, 72 F.3d 907, 915 (D.C. Cir. 1996) (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1325).

Many of Plaintiff's attorneys' timesheet entries provide only vague descriptions of the services being billed. For example, Carl N. Wedoff documents his time on vague "case status."

- 10/16/13:      "Conference with G. Freeman re case status." (0.25 hours; $128.75)

- 10/22/13:      "Email to G. Freeman re case status and research…" (1.5 hrs; $772.5)

- 1/7/14:        "….exchanged emails with M. Schwartz re case status and next steps…" (3.5 hours; $1,995)

---

3/30/17, 5/24/17, 5/25/17, 5/26/17, 5/30/17, 5/31/17, 6/1/17, 6/5/17, 8/7/17, 8/10/17, 12/8/17, 2/18/18, 2/28/18.

- 1/18/14:      "Exchanged emails with client re case status" (0.25 hours; $142.5)

- 6/16/14:      "Conferred with G. Freeman about case status and next steps" (0.25 hours; $142.5)

- 1/15/16:      "…conferred with client re case status and next steps; corresponded with B. Fischer and B. Lamb re same." (1.5 hours; $1,057.5)

*See* Fisher Decl., Ex. A.  In this, and in other entries throughout the time logs, it is impossible to ascertain what task was being performed, or how it substantively pertained to the litigation process.

Despite Plaintiff's claims to the contrary, Jenner & Block did not litigate this case in a cost-efficient manner, as demonstrated by the numerous hours billed on researching FOIA and preparing for oral arguments.  Perhaps the number of hours were necessary due to attorneys' prior inexperience with the FOIA and oral advocacy, as demonstrated by the excessive hours billed for preparing the Supplemental Complaint, the Summary Judgment motion and in preparation for oral argument.  Thus, the DEA requests that this Court reduce the total number of proposed hours to exclude excessive, redundant, and unnecessary billing.  *See Wilson v. Nomura Securities Intern. Inc.*, No. 01 CIV. 9290 RWS, 2002 WL 1560614, at *4 (S.D.N.Y. July 15, 2002) (reducing hours by 50% for "inefficiencies and excessive billing"), *rev'd in part on other grounds*, 361 F.3d 86 (2d Cir. 2004).  The DEA also requests that this Court eliminate the time spent on settlement after the DEA disclosed the Ahuas video, which is 12.75 hours.

Defendant respectfully requests that the Court apply at least an additional 20% reduction to account for inappropriate time-keeping practices.

### D.    Plaintiff Requests Fees for Acts that are not Compensated under FOIA.

Ultimately, this case was about the Ahuas Video.  Plaintiff did not press any arguments with respect to the hundreds of pages of documents that were released or withheld.

34

Nevertheless, Plaintiff seeks compensation for nearly 20 hours of document review. Although courts likely will not reduce fees incurred in "review[ing] an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation," *N.Y. Times Co.*, 251 F. Supp. 3d at 716 (quoting *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 75 (D.D.C. 2013)), the time counsel expended reviewing the records after motion practice was excessive and should not be compensated. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011) (finding that the time spent reviewing the documents requested is "is simply the price of making [a FOIA] request" and therefore not related to the claim on which Plaintiff prevailed because such review is post-relief activity, separate from litigation). The DEA requests that the following hours be excluded from any award:

**Carl Wedoff**

- 5/11/17: "Reviewed DEA supplemental FOIA response; corresponded with client, B. Fischer, and B. Lamb re same." (1 hour; $785)

- 5/24/17: "Reviewed IG report; conferred with M. Schwartz re same; reviewed DEA Rule 28(j) letter; corresponded with B. Fischer and B. Lamb re response and next steps." (2.5 hours; $1,962.5)

- 8/10/17: "Reviewed Ahuas video; corresponded with client re same; corresponded with Jenner team re status and next steps; corresponded with Assistant United States Attorney J. Apicella re same." (2 hours; $1,570)

- 11/3/17: "Review supplemental DEA production; correspond with client re same." (.25 hours; $196.25)

- 11/28/17: "Corresponded with client re review of DEA document productions and next steps in settlement negotiations." (.25 hours; $196.25)

- 11/29/17: "Corresponded with client re review of DEA document productions and next steps in settlement negotiations." (.25 hours; $196.25)

In addition, while reviewing documents is compensable when related to a government claim of exemption withholding, *Elec. Privacy Info. Ctr.*, 2011 WL 4014308, at *19, here, multiple attorneys are reviewing the same productions:

**George Freeman**

- 7/3/14:        "…reviewed 300 pages of documents produced by DEA…" (5.5 hours; $2,750)

**Brittany Lamb**

- 7/3/14:        "Reviewed FOIA response documents…" (4 hours; $1,200)

Plaintiff also requests compensation for its hours of document review pursuant to DEA's releases in the spring and fall of 2017. However, Plaintiff did not challenge any redactions or applications of exemptions after the release of the Ahuas Video. As a result, compensation should not warranted for Plaintiff's document review after the release of the Ahuas Video. Accordingly, the Court should deduct the attorney time spent in 2017 reviewing documents from any award received.

The Court also should deduct the following attorney fees relating to staffing of summer associates, travel, lunches, and developing the attorney-client relationship rather than the specific performance of legal work necessary to prevail in this litigation. *Judicial Watch, Inc.*, 878 F. Supp. 2d at 240 (finding a plaintiff cannot recover fees for "nonproductive" activities); *Smith v. Ashcroft*, No. 02-cv-0043, 2005 WL 1309149, at *4 (W.D. Mich. May 25, 2005)(reducing fees by 25% percent because the amount sought included compensation for "work not reasonably necessary to prosecute the case" such as attorney time responding to media inquiries).

**Carl N. Wedoff**

- 3/10/14:        "Review and analysis of FOIA caselaw; lunch conference with client and G. Freeman." (3 hours; $1,710)

36

- 3/13/14:    "Attended settlement conference at EDNY; travel to and from EDNY courthouse; client lunch…." (6.5 hours; $3,705)

- 5/6/16:    "Participated in Second Circuit mediation conference with client, B. Fischer, and B. Lamb; prepared for same; corresponded with B. Fischer re same; conferred with E. Prokop and B. Lamb re summer associate assistance" (3.5 hours; $2,467.5)

- 4/6/17:    "Argued appeal in Second Circuit; prepared for same; lunch with client…" (7 hours; $5,495)

*See also entries* 11/13/14, 12/16/14, 6/2/16, 6/21/16.

**George Freeman**

- 3/10/14    "Lunch with client; prepared for client meeting and followed up after meeting" (3 hours; $1,500)

In view of Plaintiff's counsel's repeated billing for un-reimbursable efforts, such as going to lunch with the client, the DEA respectfully submits that Plaintiff's billings should be reduced by at least another 10%.

### E.    Plaintiff Costs Should Be Reduced

Plaintiff bears the burden of proving its reasonable costs. *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 211 (S.D.N.Y. 2001). Yet Plaintiff has failed to submit any documentation supporting his application for $10,430.52 in costs, aside from a firm-generated "Cost Report." *See* Fischer Decl., Ex. B.  Courts have reduced awards of costs for lack of supporting documentation. S*ee, e.g., I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, Inc.*, 92 Civ. 0597(PKL), 2003 WL 135797 at *4 (S.D.N.Y. Jan. 17, 2003) (awarding approximately half of counsels' costs because of their failure to "submit any bills or receipts for the expenses"); *Rotella v. Bd. of Educ. of New York City*, 2002 WL 59106 at *5 (reducing certain costs by 50% for "vagueness and lack of documentation"). Applied to the case at hand, Plaintiff failed to provide bills or receipts for the costs and as such Plaintiffs costs should be reduced by at least 50%.

37

**F.      The Second Circuit's Limitation of Reasonable of Fees to Amounts
That a "Reasonable Paying Client" Would Pay Local Counsel
Mandates A Significant Reduction Of Plaintiff's Counsel's Billings**

In the end, the Second Circuit requires that the amount paid for attorney's fees under fee

shifting statutes reflect what a "reasonable, *paying client* would [pay] counsel from within his

district." *Arbor Hill*, 522 F.3d at 191 (emphasis added).  This is because of the public policy

against having fee shifting statutes generate a financial windfall for the litigating attorneys (in

addition to the publicity windfall of performing interesting FOIA casework).

The "paying client" factor is particularly noteworthy in this case.  Plaintiff here is not the

institution of the *New York Times*, but rather the individual journalist Mattathias Schwartz.  As

an individual "paying client" seeking information for a single story, Plaintiff reasonably would

have limited resources to pay counsel to litigate this case.  Those resources likely would be

derived from financial compensation for the story or from whatever salary he would be paid by

the *New Yorker* or the *New York Times*. [14]

Assuming *arguendo* that this story is of particular importance, it is possible to assume

that an individual Plaintiff such could devote a significant portion of this salary to pay legal fees,

perhaps as much as half, for the legal fees of this litigation.  Even assuming that this individual

---

[14] While Plaintiff has represented himself as a freelance journalist at least during some periods in
this litigation, this argument assumes for the purposes of this argument that Plaintiff is a salaried
staff reporter for the *New York Times*.  While there is no direct public information about the
amounts that reporters are paid for individual articles, available information on the internet
indicates that these amounts are minimal.  *See https://www.nytimes.com/2013/10/14/opinion/op-
ed-and-you.html?_r=0* (accessed on April 19, 2018) ("People certainly don't write for us for the
money; the payment, frankly is peanuts.")  According to Glassdoor, the average annual reported
salary for a New York Times reporter is about $100,000 a year.  *See
https://www.glassdoor.com/Salary/New-York-Times-Reporter-Salaries-E960_D_KO15,23.htm*
(accessed April 19, 2018).

38

Plaintiff would put half of his annual salary[15] towards the payment of the legal fees for this litigation, this would lead to a conclusion that a hypothetical maximum of the total legal fees in this case should be around $50,000.00.  What is particularly noteworthy is that this amount is right around the amounts of the attorney fee awards that were granted in other FOIA cases similar to this one.  *See, e.g., N.Y. Times Co.*, 251 F. Supp. 3d at 716 (awarding $51,909.86 for a contested FOIA case after three years of litigation); *Am. Immigration Council*, 82 F. Supp. 3d at 416 (granting award of $82,513.42 in FOIA case); *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 163 (D.D.C. 2015) (awarding $29,635 in attorneys' fees and costs in FOIA case lasting more than a year).   In view of this public policy, and this precedent, an award of approximately $50,000 reflects the hypothetical maximum that an actual "reasonable" paying individual client would pay for the representation in this FOIA case relating to the publication of a single print edition newspaper article and two website articles (*see* Wedoff Decl. ¶ 76).  Such a result would serve the public policy underlying the FOIA's fee shifting provisions of providing reasonable compensation, but not a windfall, to counsel, while simultaneously avoid burdening taxpayers with the excessive, duplicative and ineligible billings detailed above.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion for Attorney Fees and Costs.  In the alternative, should the Court decide to grant the Plaintiff's motion, Defendant respectfully requests that any award to the Plaintiff for Attorneys' fees be substantially reduced from the claimed amounts as detailed above.

---

[15] For the purposes of this motion, this argument assumes that a plaintiff could or would devote half of the reporter's salary before taxes and other expenses such as rent/mortgage, food, clothing, etc. are deducted.

Dated: April 20, 2018

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Jolie Apicella
Assistant U.S. Attorney
(718) 254-6528

Counsel for Defendant